**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

     Plaintiff,

        v.                            Civil Action No.  11-1021 (JEB)

U.S. DEPARTMENT OF JUSTICE,

     Defendant.

## MEMORANDUM OPINION

On January 24, 2011, Plaintiff Citizens for Responsibility and Ethics in Washington

(CREW) submitted requests under the Freedom of Information Act to the Department of

Justice's Criminal Division, Federal Bureau of Investigation, and Executive Office of U.S.

Attorneys.  CREW sought any records relating to the criminal investigation of Representative

Jerry Lewis, a California Congressman who had been investigated in connection with allegations

that he had improperly provided earmarks and government contracts to donors.   All three DOJ

components categorically denied CREW's requests.  CREW appealed their denials, but filed a

Complaint initiating the instant suit before a decision was rendered.  DOJ has now moved for

Summary Judgment, asking the Court to uphold its determination that the requested materials are

categorically exempt from disclosure under FOIA Exemptions 6 and 7(C).  CREW has filed a

Cross-Motion for Partial Summary Judgment, claiming that, in light of the public interest in how

the agency has handled high-profile allegations of public corruption, a categorical denial is not

appropriate.

After comparing the privacy interests and the public interest at stake in the records at

issue, the Court finds that the balance does not so characteristically tip in favor of privacy as to

justify DOJ's categorical denial.  Although the Government may ultimately be entitled to

withhold the majority — or even the entirety — of the requested files, it must provide a legal

basis for withholding each responsive document or group of documents.  The Court will,

accordingly, deny Defendant's Motion for Summary Judgment, grant Plaintiff's Motion for

Partial Summary Judgment, and order that the Government submit a <u>Vaughn</u> Index identifying

the documents it has withheld and the legal justifications for having done so.

## I.      Background

In mid-2006 the media began to report that Representative Jerry Lewis, former chairman

and ranking member of the House Appropriations Committee, was the subject of a criminal

investigation regarding earmarks and government contracts allegedly provided in exchange for

financial contributions.  <u>See, e.g.</u>, Pl.'s Statement of Undisputed Mat. Facts (SUMF), ¶ 2; Pl.'s

Mot., Exh. C (Charles Babcock, *House Appropriation Chairman Is Facing Federal*

*Investigation*, Washington Post, May 12, 2006).  Four years later, in December 2010, DOJ

announced it had closed its investigation without bringing any charges.  <u>See</u> Pl.'s SUMF, ¶ 4;

Pl.'s Mot., Exh. G (Associated Press, *Justice Dep. Ends Inquiry on Politician*, N.Y. Times, Dec.

4, 2010).

By letters dated January 24, 2011, CREW submitted FOIA requests to three components

of DOJ — the Criminal Division, the FBI, and EOUSA — for "all records related to

investigation of Rep. Jerry Lewis (R-CA) . . . that are not covered by grand jury secrecy pursuant

to Rule 6(e) of the Federal Rules of Criminal Procedure, including but not limited to DOJ's

decision not to bring criminal charges against him."  Def.'s Mot., Exh. A to Decl. of Vinay Jolly

(Letter 1 from Adam Rappaport, Jan. 24, 2011) at 1; Pl.'s Mot., Exh. 1 (Letter 2 from Adam

Rappaport, Jan. 24, 2011) at 1; Def.'s Mot., Exh. A to Decl. of David Hardy (Letter 3 from

Adam Rappaport, Jan. 24, 2011) at 1.  CREW contended that it sought those records in order "to

contribute to greater public awareness of alleged malfeasance and possible criminal behavior by

Rep. Lewis and why, despite this apparent malfeasance, DOJ refused to prosecute Rep. Lewis."

Rappaport Letter 2, Jan. 24, 2011, at 2.  "The requested documents," it suggested, "would shed

light on the conduct of DOJ and the FBI in conducting the investigation of Rep. Lewis, and

DOJ's decision to close the investigation without bringing charges against him."  Id.

Each component responded separately.  By letter dated February 1, 2011, the Criminal

Division acknowledged receipt of CREW's request and represented that it would conduct a

search to determine whether it had responsive records in its possession, then notify CREW of its

disposition of the request following that search.  See Pl.'s Mot., Exh. 2 (Letter from Rena Kim,

Feb. 1, 2011) at 1.  A month later, the Criminal Division informed CREW by letter that it had

located one box of documents responsive to its request, but was withholding the records in full

pursuant to FOIA exemptions 3, 5, 6, and 7.  See Pl.'s Mot., Exh. 3 (Letter from Rena Kim, Mar.

3, 2011) at 1.  It also advised CREW that it had located various responsive public records and

that it would provide those records if requested.  See id. at 2.

By letter also dated February 1, 2011, EOUSA acknowledged receipt of CREW's request

and advised CREW that "[r]ecords pertaining to a third party generally cannot be released absent

express authorization and consent of the third party, proof that the subject of [the] request is

deceased, or a clear demonstration that the public interest in disclosure outweighs the personal

privacy interest and that significant public benefit would result from the disclosure of the

requested records."  Def.'s Mot., Exh. B to Jolly Decl. (Letter from William Stewart, Feb. 1,

2011) at 1.  Because CREW had not provided proof of Lewis's consent, proof of his death, or a

public justification for release of the records, EOUSA denied the request.  See id.  In so doing, it

cited the protections of personal privacy contained in the Privacy Act, 5 U.S.C. § 552a, along with FOIA exemptions 6 and 7. <u>See</u> <u>id.</u>  EOUSA also notified CREW that it would conduct a search for responsive public records if requested. <u>See</u> <u>id.</u>

By letter dated February 3, 2011, the FBI acknowledged receipt of CREW's request and, in language identical to that used by EOUSA, stated that it had a policy of denying requests to release records pertaining to third parties absent proof of consent, proof of death, or the identification of a public interest-based justification for release. Def.'s Mot., Exh. B to Hardy Decl. (Letter from David Hardy, Feb. 3, 2011) at 1.  Because CREW had provided none of these, the FBI denied its request. <u>See</u> <u>id.</u>  Like EOUSA, it cited the protections of personal privacy contained in the Privacy Act, 5 U.S.C. § 552a, along with FOIA exemptions 6 and 7, and it notified CREW that it would conduct a search for responsive public records if the organization so desired. <u>See</u> <u>id.</u>

CREW administratively appealed the decisions of all three components. <u>See</u> Pl.'s Mot., Exh. 4 (Letter from Priscilla Jones, Apr. 4, 2011) at 1; Def.'s Mot., Exh. C to Jolly Decl. (Letter from Adam Rappaport, Feb. 24, 2011); Def.'s Mot., Exh. C to Hardy Decl. (Letter from Adam Rappaport, Feb. 24, 2011) at 1.  Prior to receiving decisions regarding its three appeals, however, it filed a Complaint initiating the instant suit on June 2, 2011.  CREW contends that "Defendant DOJ has wrongfully withheld agency records . . . by failing to comply with the statutory time limit for rendering decisions on [CREW's] appeals," and it requests the immediate disclosure of all responsive records.  Compl., ¶ 22.  DOJ has now filed a Motion for Summary Judgment, and CREW, requesting that the Court order the Government to submit a <u>Vaughn</u> Index, has filed a Cross-Motion for Partial Summary Judgment.

**II.     Legal Standard**

4

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. Liberty Lobby, Inc., 477 U.S. at 248. Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. United States Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In a FOIA case, the Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations if they are relatively detailed and when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. Sec. &

Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v.

Cent. Intelligence Agency, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## III.   Analysis

FOIA provides that "each agency, upon any request for records which (A) reasonably

describes such records and (B) is made in accordance with published rules . . . , shall make the

records promptly available to any person."  5 U.S.C. § 552(a)(3).  Consistent with this statutory

mandate, federal courts have jurisdiction to order the production of records that an agency

improperly withholds.  See 5 U.S.C. § 552(a)(4)(B); U.S. Dep't of Justice v. Reporters Comm.

for Freedom of the Press, 489 U.S. 749, 755 (1989).  "Unlike the review of other agency action

that must be upheld if supported by substantial evidence and not arbitrary and capricious, the

FOIA expressly places the burden 'on the agency to sustain its action' and directs the district

courts to 'determine the matter de novo.'"  Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C.

§ 552(a)(4)(B)).  "At all times, courts must bear in mind that FOIA mandates a 'strong

presumption in favor of disclosure . . . .'"  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26,

32 (D.C. Cir. 2002) (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

Congress exempted nine categories of documents from FOIA's broad sweep.  "[T]he

statutory exemptions, which are exclusive, are to be 'narrowly construed.'"  Id. (quoting Dep't of

Air Force v. Rose, 425 U.S. 352, 361 (1976)). This case turns on the application of Exemptions 6

and 7(C).[1]  Exemption 6 protects "personnel and medical files and similar files the disclosure of

which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. §

552(b)(6).  Exemption 7(C) excludes "records of information compiled for law enforcement

purposes . . . to the extent that production of such law enforcement records or information . . .

---

[1] Although in responding to CREW's request the Criminal Division also cited exemptions 3 and 5, the Government's argument at this juncture appears to rest solely on exemptions 6 and 7(C).

could reasonably be expected to constitute an unwarranted invasion of personal privacy." Id. §
552(b)(7)(C).  Both provisions require agencies and reviewing courts to "balance the privacy
interests that would be compromised by disclosure against the public interest in the release of the
requested information."  Beck v. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting
Davis v. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

Although both exemptions require agencies and reviewing courts to undertake the same
weighing of interests, the balance tilts more strongly toward nondisclosure in the context of
Exemption 7(C) because "Exemption 7(C)'s privacy language is broader than the comparable
language in Exemption 6 in two respects."  Reporters Comm., 489 U.S. at 756.  First, Exemption
6 encompasses "clearly unwarranted" invasions of privacy, while Exemption 7(C) omits the
adverb "clearly."  See id.  Second, Exemption 6 prevents disclosures that "would constitute" an
invasion of privacy, while Exemption 7(C) targets disclosures that "could reasonably be
expected to constitute" such an invasion.  See id.  Both differences are the result of specific
amendments, reflecting Congress's conscious choice to provide greater protection to law-
enforcement materials than to personnel, medical, and other similar files.  See id.  As a result,
courts have held that Exemption 7(C) "establishes a lower bar for withholding material [than
Exemption 6]," ACLU v. U.S. Dep't of Justice, 655 F.3d 1, 6 (D.C. Cir. 2011); see also Beck v.
Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993).   The Court, accordingly, need only
address whether DOJ has properly withheld these documents under Exemption 7(C).

Because Plaintiff concedes that the records in question were "compiled for law
enforcement purposes" and, therefore, that Exemption 7(C) applies, see Pl.'s Mot. & Opp. at 10
n.16, the sole question before the Court is whether DOJ properly balanced the competing
interests when it categorically refused to provide the records CREW requested.  Cf. ACLU, 655

F.3d at 6. In answering that question, the Court will first address the privacy interests in withholding the documents, then turn to the public's interest in their disclosure. Having evaluated the strength of the interests on both sides of the scale, it will determine whether the balance "characteristically tips in the direction of exemption," Nation Magazine, Washington Bureau v. U.S. Customs Serv., 71 F.3d 885, 895 (D.C. Cir. 1995), so as to justify the agency's categorical denial of CREW's request.

    A. Privacy Interests in Withholding

    The first step in the Exemption 7(C) analysis is to determine whether there is, in fact, a privacy interest in the materials sought. See ACLU, 655 F.3d at 6. In this context, the Supreme Court has rejected a "cramped notion of personal privacy" and emphasized that "privacy encompass[es] the individual's control of information concerning his or her person." Reporters Comm., 489 U.S. at 763. To constitute a privacy interest under FOIA, the claimed interest must be "substantial." Multi Ag Media LLC v. USDA, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008). "[S]ubstantial," however, "means less than it might seem. A substantial privacy interest is anything greater than a *de minimis* privacy interest." Id.

    Although his is not the only privacy interest allegedly implicated here, the existence and extent of Rep. Lewis's interest in these documents' remaining undisclosed is the primary focus of both parties. Before addressing his privacy interest in the materials at issue, it is worth noting that Lewis's status as a public official operates to reduce his cognizable interest in privacy as a general matter. See Kimberlin v. Dep't of Justice, 139 F.3d 944, 949 (D.C. Cir. 1998). But despite the fact that his privacy interest is "somewhat diminished" by the office he holds, he nevertheless "d[id] not surrender all rights to personal privacy when [he] accept[ed] a public appointment." Quinon v. FBI, 86 F.3d 1222, 1230 (D.C. Cir. 1996).

In the context of Exemption 7(C), it is well established that "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity." Stern v. FBI, 737 F.2d 84, 91-92 (D.C. Cir. 1984); see also Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C. Cir. 1990) ("It is surely beyond dispute that 'the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation.'" (quoting Branch v. FBI, 658 F. Supp. 204, 209 (D.D.C. 1987))); Nation Magazine, 71 F.3d at 894 ("[I]ndividuals have an obvious privacy interest . . . in keeping secret the fact that they were subjects of a law enforcement investigation."). Even the mere acknowledgement of the existence of records relating to criminal investigations (let alone their contents), accordingly, can constitute an invasion of privacy. This privacy interest is strongest where the individuals in question "have been investigated but never publicly charged." ACLU, 655 F.3d at 7. And despite the fact that public officials generally have a lesser interest in privacy, our Circuit has noted that holding public office might actually augment the intrusion caused by "revelation of the fact that an individual has been investigated for suspected criminal activity." Fund for Constitutional Gov't, 656 F.2d at 865. "The disclosure of that information," the court stated, "would produce the unwarranted result of placing the named individuals in the position of having to defend their conduct in the public forum outside of the procedural protections normally afforded the accused in criminal proceedings." Id.

CREW acknowledges that individuals generally have an interest in keeping private the fact of a criminal investigation into their activities. It maintains, however, that because both the agency and Lewis himself have publicly acknowledged the investigation's existence, that particular interest is not implicated — or, at least, substantially diminished — in this case. The Court agrees with CREW's fallback position. When the fact of an investigation "is already a

matter of public record," the target's privacy interest in that information has "far less force." CREW v. U.S. Dep't of Justice, --- F. Supp. 2d ---, 2012 WL 45499, at *6 (D.D.C. 2012); see also Kimberlin, 139 F.3d at 949 (stating that individual's acknowledgement of investigation "undoubtedly . . . diminished" his privacy interest); cf. ACLU, 655 F.3d at 5 ("[I]nformation may be classified as 'private' if it is . . . not freely available to the public." (quoting Reporters Comm., 489 U.S. at 763-64) (internal quotation marks omitted)).

While CREW may well be correct that by virtue of its public disclosure Lewis does not retain a significant privacy interest in the fact of an investigation, he nevertheless retains a privacy interest in the substance of that investigation.  "[S]urely [Lewis] did not, merely by acknowledging the investigation . . . , waive all his interest in keeping the contents of the . . . file confidential."  Kimberlin, 139 F.3d at 949.  Despite the fact that it is a matter of public record that an investigation took place, the details of that investigation have not been publicly disclosed. Indeed, that is why CREW has sought information from the Government.  Lewis, accordingly, retains a cognizable privacy interest in the requested records.

That public acknowledgement of an investigation reduces but does not eliminate an individual's privacy interest in preventing the disclosure of the contents of that investigation follows from the Court of Appeals' decision in Kimberlin.  In that case, an Assistant United States Attorney publicly acknowledged that he had been investigated and had received a mild sanction for unethical conduct.  See id. at 946-47.  The court recognized that "[the AUSA's] statement to the press undoubtedly . . . diminish[ed] his interest in privacy: the public already knows who he is, what he was accused of, and that he received a relatively mild sanction."  Id. at 949.  It concluded, nevertheless, "that official confirmation of what ha[d] been reported in the

press and the disclosure of additional details could reasonably be expected to constitute an unwarranted invasion of [the AUSA's] personal privacy." Id. So, too, here.

Rep. Lewis, furthermore, is not the only individual with a privacy interest at stake in these documents. "[T]hird parties who may be mentioned in investigatory files, as well as . . . witnesses and informants who provided information during the course of an investigation," also have a privacy interest in the contents of law-enforcement records. Nation Magazine, 71 F.3d at 894; see also Kimberlin, 139 F.3d at 949 ("It almost goes without saying, moreover, that individuals other than [the target of the investigation] whose names appear in the file retain a strong privacy interest in not being associated with an investigation involving professional misconduct."). Indeed, this interest is so strong that our Circuit has "adopted a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" Schrecker v. U.S. Dep't of Justice, 349 F.3d 657, 661 (D.C. Cir. 2003) (quoting SafeCard, 926 F.2d at 487-88).

In sum, Lewis retains a cognizable privacy interest in the contents of DOJ's investigation into the allegations of corruption leveled against him. In addition, any third parties mentioned in those files, including, in particular, informants and witnesses, have a significant interest in their contents not being disclosed.

B. The Public's Interest in Disclosure

Because both Rep. Lewis and other third parties have cognizable privacy interests in DOJ's withholding of the requested documents, the Court will turn to the counterweight: the public's interest in disclosure. "This interest must be assessed in light of FOIA's central purpose, which is 'to open agency action to the light of public scrutiny.'" Nation Magazine, 71

11

F.3d at 894 (quoting <u>Rose</u>, 425 U.S. at 372).  The statute is concerned with promoting "the

citizens' right to be informed about 'what their government is up to,'" <u>Reporters Comm.</u>, 489

U.S. at 773, but "the citizen must show that the public interest sought to be advanced is a

significant one, an interest more specific than having the information for its own sake." <u>Nat'l</u>

<u>Archives & Records Admin. v. Favish</u>, 541 U.S. 157, 172 (2004).

　　　　In <u>Reporters Committee</u>, the Supreme Court explained how this purpose connects to

Exemption 7(C):

> Official information that sheds light on an agency's performance
> of its statutory duties falls squarely within that statutory purpose.
> That purpose, however, is not fostered by disclosure of information
> about private citizens that is accumulated in various governmental
> files but that reveals little or nothing about an agency's own
> conduct.

489 U.S. at 773.  In other words, "FOIA extends only to those records which reveal something

about <u>agency action</u>," not to those that concern only the actions of private individuals.  <u>Nation</u>

<u>Magazine</u>, 71 F.3d at 894 (emphasis in original).

　　　　"[T]he mere fact that records pertain to an individual's activities," however, does not

necessarily entail that there is no cognizable public interest in their disclosure and thereby

qualify them for an exemption.  <u>Id.</u>  "Such records may still be cloaked with the public interest if

the information would shed light on agency action." <u>Id.</u>  CREW claims just such a purpose in

seeking these records.  In its FOIA request CREW maintained that disclosure of the files in

question "would shed light on the conduct of DOJ and the FBI in conducting the investigation of

Rep. Lewis, and DOJ's decision to close the investigation without bringing charges against him."

Rappaport Letter 2, Jan. 24, 2011 at 2.  Though CREW also noted that it intended the records to

"contribute to greater public awareness of alleged malfeasance and possible criminal behavior by

Rep. Lewis," <u>id.</u>, its focus was and remains on the agency's decision not to prosecute him.

"[M]atters of substantive law enforcement policy," moreover, "are properly the subject of public concern." <u>ACLU</u>, 655 F.3d at 14 (quoting <u>Reporters Comm.</u>, 489 U.S. at 766 n.18) (internal quotation marks omitted).  Rep. Lewis holds public office, and the allegations of corruption against him were significant.  Against the backdrop of broader public concerns about the agency's handling of allegations of corruption leveled against high-ranking public officials (especially in the wake of its failure to successfully prosecute Senator Ted Stevens), <u>see, e.g.</u>, Pl.'s Reply, Exh. A (Charlie Savage, <u>Justice Dept. Is Criticized as Corruption Cases Close</u>, *N.Y. Times*, Dec. 20, 2010), the public has a clear interest in documents concerning DOJ's handling of the Lewis investigation.  Such records may "contribute significantly to public understanding of the operations or activities of the government."  5 U.S.C. § 552(a)(4)(A)(iii).

In a very similar case, another court in this District found that the public's interest in disclosure of information concerning DOJ's investigation of a congressman who had been accused of bribery and other illegal conduct was "very strong," <u>CREW</u>, 2012 WL 45499, at *9:

> It is difficult to understand how there could not be a substantial public interest in disclosure of documents regarding the manner in which DOJ handled high profile allegations of public corruption about an elected official.  Clearly, the American public has a right to know about the manner in which its representatives are conducting themselves and whether the government agency responsible for investigating and, if warranted, prosecuting those representatives for alleged illegal conduct is doing its job.

<u>Id.</u> at *7.  The Court thus determined that disclosure of the details of the investigation "would unquestionably" serve the public's interest.  <u>See id.</u>

Finally, it is worth clarifying that CREW does not contend that these records will demonstrate agency misconduct.  541 U.S. 157 (2004).  In <u>Favish</u>, the Supreme Court suggested that "the justification most likely to satisfy Exemption 7(C)'s public interest requirement is that the information is necessary to show the investigative agency or other responsible officials acted

negligently or otherwise improperly in the performance of their duties."  541 U.S. at 173.  When

this is the public interest being asserted, the Court held that "the requester must produce evidence

that would warrant a belief by a reasonable person that alleged Government impropriety might

have occurred."  Id. at 174.  The Court, however, emphasized that it "d[id] not in th[at] single

decision attempt to define the reasons that will suffice" to justify disclosure when "the privacy

concerns addressed by Exemption 7(C) are present."  Id. at 172.  Because CREW has not

attempted to justify its request on the ground of agency misconduct (indeed, the decision not to

prosecute is a discretionary one), it need not produce the compelling evidence of illegal activity

that would be required if it had done so.  See Showing Animals Respect & Kindness, 730 F.

Supp. 2d at 195 n.17 (Favish evidentiary production not required when "Plaintiff does not argue

that there was any negligence or misfeasance on the part of government officials"); ACLU, 655

F.3d at 14 (evidence of misconduct not required when requester is "not (or at least only) seeking

to show" government policy "is legally improper").

　　　At the end of the analysis, the Court finds that CREW has articulated a specific and

significant public interest in the records in question.

　　　C.  Balancing the Interests

　　　Having found significant interests on both sides of the scale, the Court now steps back to

consider, in light of the particular concerns implicated by Exemption 7(C), which way the

balance tilts with respect to the documents CREW has requested.  Citing a policy of categorically

withholding law-enforcement files concerning a third party absent his consent, proof of his

death, or a demonstration of an overriding public interest, DOJ has withheld in full the

documents CREW seeks. CREW does not challenge that policy *per se*; indeed, it was recently

upheld by another court in this district.  See Graff v. FBI, --- F. Supp. 2d ---, 2011 WL 5401928,

at *10 (D.D.C. 2011).  Instead, it contests the <u>application</u> of that policy to its request here, arguing that it has demonstrated a sufficiently significant public interest in disclosure such that a blanket denial is not appropriate.  Even if the balance may favor privacy with respect to some documents or portions of documents in the responsive file, CREW maintains that the Government must provide a <u>Vaughn</u> Index identifying the documents that have been withheld and providing legal justifications for each withholding.

"Because the myriad . . . considerations involved in the Exemption 7(C) balance defy rigid compartmentalization, *per se* rules of nondisclosure based upon the type of document requested, the type of individual involved, or the type of activity inquired into, are generally disfavored."  <u>Stern</u>, 737 F.2d at 91.  In some circumstances, however, "[r]ules exempting certain categories of records from disclosure are permitted, even encouraged, as a workable manner of meeting FOIA obligations."  <u>Nation Magazine</u>, 71 F.3d at 893 (citing <u>Reporters Comm.</u>, 489 U.S. at 779).  "Only when the range of circumstances included in the category 'characteristically supports an inference' that the statutory requirements for exemption are satisfied is such a rule appropriate."  <u>Id.</u> (quoting <u>United States v. Landano</u>, 508 U.S. 165, 177 (1993)).  To uphold DOJ's categorical denial, therefore, the Court must find that privacy interests in the documents related to Lewis's investigation "characteristically" outweigh the public's interests in those documents.

They do not.  In light of the strong public interest at stake in the requested records, the Court is not persuaded that the balance will favor privacy with respect to <u>each document</u> that concerns the Lewis investigation.  "In some, perhaps many, instances where a third party asks if an agency has information regarding a named individual in its law enforcement files, the cognizable public interest in that information will be negligible; the requester will be seeking

records about a private citizen, not agency conduct." <u>Nation Magazine</u>, 71 F.3d at 895.  In such

cases and in cases where, conversely, there is only a *de minimis* privacy interest, it is simple for a

court to determine that the records fit a "genus in which the balance characteristically tips in one

direction." <u>Reporters Comm.</u>, 489 U.S. at 776.  Indeed, for this reason the agency's general

policy of categorical withholding absent the requester's identification of a significant public

interest makes sense.

"In this case, however, appellants have identified a public interest cognizable under FOIA

in disclosure," <u>Nation Magazine</u>, 71 F.3d at 895, and a significant one at that.  Where, as here,

there are significant interests on both sides of the scale, discerning whether the balance favors

privacy with respect to a set of documents the contents of which remain unidentified becomes

more difficult.  The weights of those interests, furthermore, may vary with respect to each

document within the responsive file. Determining whether withholding is justified, therefore,

requires a more nuanced analysis than can be undertaken without an account of the records in the

Government's possession.  The Court is simply not able to come to a conclusion as to the

balance between the privacy and public interests at this level of generality.

Notably, moreover, this is not a case in which requiring the Government to submit a

<u>Vaughn</u> Index might itself adversely affect an individual's interest in not being associated with

an investigation in the first place.  Because the investigation into Lewis's activities has been

publicly acknowledged, his privacy interests would not be meaningfully affected by an

accounting of the records the agency possesses.  Indeed, the Government has already

acknowledged that responsive records exist.  <u>See</u> Letter from Rena Kim, Mar. 3, 2011.

The Court, therefore, will grant Plaintiff's Partial Motion for Summary Judgment and

order that the agency submit a <u>Vaughn</u> Index that identifies each document or group of

documents it seeks to withhold, along with "a relatively detailed justification" for doing so.

Mead Data Central, Inc. v. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977) (citing

Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1972)).

It is important, however, to emphasize the limited nature of CREW's success here. The

Court does not decide whether the Government need turn over anything at all in response to

CREW's request. It may well turn out that it need not. Indeed, any portions of the requested

documents that reveal "the names and addresses of private individuals" are categorically exempt

from disclosure. SafeCard, 926 F.2d at 1205; see also Nation Magazine, 71 F.3d at 896. On the

other hand, documents simply assessing, for example, whether or not to seek an indictment may

not be covered by Exemptions 6 or 7(C). In sum, the Court at this juncture simply finds that it

cannot resolve this dispute at the altitude DOJ desires. The Government must identify the

documents in its possession, provide specific justifications for its withholdings, and, consistent

with FOIA's mandate that "[a]ny reasonably segregable portion of a record shall be provided . . .

after deletion of the portions which are exempt," 5 U.S.C. § 552(b), disclose any non-exempt

portions of the requested documents that are not "inextricably intertwined with exempt portions."

Mead, 556 F.2d at 260. An assessment of the Government's justifications for particular

withholdings and CREW's challenges thereto will be for another day.

**IV.  Conclusion**

For the foregoing reasons, the Court will issue a contemporaneous Order denying

Defendant's Motion for Summary Judgment and granting Plaintiff's motion for Partial Summary

Judgment.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: March 2, 2012

17