UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

     Plaintiff,

          v.                        Civil Action No. 11-1021 (JEB)

UNITED STATES DEPARTMENT OF
JUSTICE,

     Defendant.

MEMORANDUM OPINION

Plaintiff Citizens for Responsibility and Ethics in Washington brought this action under

the Freedom of Information Act, 5 U.S.C. § 552, seeking records related to an investigation by

the Department of Justice into allegations of bribery and conflicts of interest involving former

Congressman Jerry Lewis (R-CA).  After this Court rejected DOJ's attempt to categorically

exclude virtually all of the materials sought from disclosure, Defendant released over two

thousand documents, at least in part.  DOJ also withheld several thousand more under various

FOIA exemptions, and the parties have now cross-moved for summary judgment on the validity

of these exemptions.  Although DOJ's time-consuming efforts here are impressive, the Court is

constrained to conclude that FOIA requires more.  Because the Department has failed to provide

sufficient documentation for the Court to be able to evaluate each of its exemption claims, the

Court denies Defendant's Motion, grants Plaintiff's Cross-Motion in part, and directs DOJ to

produce additional explanations as described below.

1

I.      **Background**

On January 24, 2011, Plaintiff submitted identical FOIA requests to the Federal Bureau of Investigation, the Criminal Division of the United States Department of Justice (CRM), and the Executive Office for United States Attorneys (EOUSA).  See Def. Mot., Exh. 6 (Statement of Material Facts (SUMF)), ¶ 1.  Plaintiff sought "all records related to the investigation of Rep. Jerry Lewis (R-CA) conducted by DOJ and the Federal Bureau of Investigation ('FBI') that are not covered by grand jury secrecy pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure, including but not limited to DOJ's decision not to bring criminal charges against him."  Id., ¶ 2.  Both CRM and EOUSA denied Plaintiff's initial requests for various reasons, and CREW brought suit in this Court on June 2, 2011, prior to receiving a decision from DOJ's Office of Information Policy on its pending administrative appeals.  Id., ¶¶ 3-7.

The parties cross-moved for summary judgment in late 2011 on the issue of whether DOJ could categorically withhold all responsive documents pursuant to FOIA Exemptions 6 and 7(C).  In March 2012, this Court denied Defendant's motion and granted partial summary judgment to Plaintiff, ordering CRM and EOUSA to continue processing responsive records, release non-exempt portions thereof, and produce a Vaughn Index describing the withheld information.  See Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice (CREW I), 846 F. Supp. 2d 63, 75-76 (D.D.C. 2012).  In response to this Court's Order, CRM produced 166 pages of non-exempt, responsive records, along with a Vaughn Index describing the thirty-nine additional documents withheld pursuant to FOIA Exemptions 5, 6, and 7(C).  See SUMF, ¶¶ 11-13; see also Def. Mot., Exh. 1 (Declaration of John E. Cunningham III), Exh. 8 (Criminal Division Vaughn Index) at 1-6.

As a result of its initial search, EOUSA identified a universe of some 2.3 million documents possibly related to Plaintiff's request.  See SUMF, ¶¶ 14-15.  After processing and de-duplication, it identified 95,228 documents, totaling some 1,443,703 pages, that were potentially responsive.  Id., ¶¶ 16-17.  It processed these potentially responsive documents on a rolling basis, eventually determining that there were 6,194 actually responsive documents, totaling 25,414 pages, all of which it sought to withhold in whole or in part.  Id., ¶¶ 20-22. EOUSA also provided CREW with a Vaughn "Glossary," which divided the 6,194 documents withheld in whole or in part into thirteen categories.  Id., ¶¶ 22-24, see Def. Mot., Exh. 3 (Second Declaration of Vinay J. Jolly), Exh. I (EOUSA Vaughn Index) at 1-8.  These categories are:

- Category 1: Internal AUSA [Asst. U.S. Attorney]/USAO-CAC [U.S. Attorney's Office for the Central District of California] Communications – 1,633 documents

- Category 2: AUSA/USAO-CAC Communications with the FBI – 522 documents

- Category 3: Google Alerts to USAO-CAC Employees – 2,357 documents

- Category 4: AUSA/USAO-CAC Communications with CRM [DOJ's Criminal Division] – 72 documents

- Category 5: AUSA/USAO-CAC Communications with the Department of Defense – 207 documents

- Category 6: Internal AUSA/USAO-CAC Communications with OIP [Office of Information Privacy] – 16 documents

- Category 7: Internal AUSA/USAO-CAC Communications with the Office of Legislative Affairs – 13 documents

- Category 8: Internal AUSA/USAO-CAC Communications with the Office of the General Counsel [at the Executive Office for United States Attorneys] – 19 documents

- Category 9: AUSA/USAO-CAC Communications with Third Parties of Investigative Interest or Witnesses – 511 documents

- Category 10: Internal AUSA/USAO-CAC Notes – 74 documents

- Category 11: AUSA Legal and Legislative Research – 49 documents

- Category 12: AUSA/USAO-CAC Communications with Multiple Agencies – 294 documents
- Category 13: Miscellaneous Communications and USAO/CAC Electronic Server Data – 427 documents

See 2d Jolly Decl., ¶¶ 18-32.  Almost all of the 2,367 documents released in part to Plaintiff are confined to Category 3.  See EOUSA Vaughn Index at 2.  As that category contains only 2,357 documents, the nature of the remaining ten partially released documents remains unclear.  These efforts required more than 1,978 personnel hours.  See SUMF, ¶ 21.

EOUSA asserted that the remaining documents were exempt from disclosure pursuant to FOIA Exemptions 3, 5, 6, and 7(C), "in order to protect attorney work product, privileged, and third-party privacy protected material, as well as grand jury information intertwined with the responsive records."  Id., ¶ 25.  Defendant then moved for summary judgment, arguing that it had engaged in a reasonable search for responsive documents and properly withheld records pursuant to the aforementioned exemptions.  See Def. Mot. at 10-27.  CREW opposed the Motion and filed a Cross-Motion for Summary Judgment, conceding the adequacy of the search but challenging the propriety of the government's withholdings and the sufficiency of its Vaughn Indices.  See Pl.'s Opp. and Cross-Mot. at 5-22.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477

U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely

disputed must support the assertion" by "citing to particular parts of materials in the record" or

"showing that the materials cited do not establish the absence or presence of a genuine dispute,

or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P.

56(c)(1).  The moving party bears the burden of demonstrating the absence of a genuine issue of

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

　　　　FOIA cases typically and appropriately are decided on motions for summary judgment.

See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, a

court may grant summary judgment based solely on information provided in an agency's

affidavits or declarations when they "describe the justifications for nondisclosure with

reasonably specific detail, demonstrate that the information withheld logically falls within the

claimed exemption, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith."  Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009)

(citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith,

which cannot be rebutted by purely speculative claims about the existence and discoverability of

other documents."  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal

quotation marks omitted).  "Unlike the review of other agency action that must be upheld if

supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the

burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter

de novo.'"  U.S. Dep't of Justice v. Reporters Comm. for the Freedom of the Press, 489 U.S.

749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

### III.    Analysis

Congress enacted FOIA in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted).  "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted).  The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . .  shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).  Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds.  See 5 U.S.C. § 552(a)(4)(B); Reporters Comm., 489 U.S. at 755.  "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary and capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'"  Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)).  "At all times, courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ."  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

After briefly addressing whether DOJ's search for documents was reasonable and adequate, the Court will turn to the gravamen of the Motions: whether DOJ appropriately justified its withholdings under Exemptions 3, 5, 6, and 7(C).

A.  <u>Adequacy of the Search</u>

FOIA requires government agencies to describe their searches in enough detail for a court

to determine whether the search was sufficiently exhaustive to satisfy the Act.  <u>Nation Magazine,</u>

<u>Washington Bureau v. U.S. Customs Service</u>, 71 F.3d 885, 890 (D.C. Cir. 1995); <u>Oglesby v.</u>

<u>U.S. Dep't of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990).  "An agency fulfills its obligations under

FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to

uncover all relevant documents.'"  <u>Valencia-Lucena v. Coast Guard</u>, 180 F.3d 321, 325 (D.C.

Cir. 1999) (quoting <u>Truitt v. Dep't of State</u>, 897 F.2d 540, 542 (D.C. Cir. 1990)); <u>see also</u>

<u>Steinberg v. Dep't of Justice</u>, 23 F.3d 548, 551 (D.C. Cir. 1994).  "[T]he issue to be resolved is

not whether there might exist any other documents possibly responsive to the request, but rather

whether the <u>search</u> for those documents was <u>adequate</u>."  <u>Weisberg v. Dep't of Justice</u>, 745 F.2d

1476, 1485 (D.C. Cir. 1984) (emphasis in original).  The adequacy of an agency's search for

documents requested under FOIA "is judged by a standard of reasonableness and depends, not

surprisingly, upon the facts of each case."  <u>Id.</u>  To meet its burden, the agency may submit

affidavits or declarations that explain the scope and method of its search "in reasonable detail."

<u>Perry v. Block</u>, 684 F.2d 121, 127 (D.C. Cir. 1982).  Absent contrary evidence, such affidavits or

declarations are sufficient to show that an agency complied with FOIA.  <u>See id.</u>  "If, however,

the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the

agency is not proper."  <u>Truitt</u>, 897 F.2d at 542.

The parties here do not dispute the adequacy of Defendant's search for documents:

Plaintiff raises no such challenge, and the Court independently finds that the searches were

adequate.  According to John Cunningham, a Trial Attorney in the FOIA/Privacy Act Unit in the

Office of Enforcement Operations at the Criminal Division who was personally involved in the

search, the Criminal Division searched the Automated Case Tracking System, a comprehensive database storing records related to investigations, and identified records related to Plaintiff's request.  See Cunningham Decl., ¶¶ 1, 5, 9.  The United States Attorney's Office for the Central District of California also completed a system-wide search for responsive records, seeking records relating to the Lewis investigation from all current and former USAO-CAC employees assigned to the matter, electronic mail and servers, all paper records, and both on-site and off-site file storage locations, using Lewis's first and last name, and the code-name for the investigation.  See 2d Jolly Decl., ¶ 15.  These efforts were "reasonably calculated to uncover all relevant documents."  Truitt, 897 F.2d at 542.  The Court thus finds that the searches conducted by both components – EOUSA and CRM – were adequate.

      B.  Propriety of Defendant's Withholdings

      FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . , shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  Nine categories of information are exempt from FOIA's broad rules of disclosure.  5 U.S.C. § 552(b)(1)-(9).  These exemptions are to be narrowly construed, see Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976), and the reviewing court must bear in mind that FOIA mandates a "strong presumption in favor of disclosure."  U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991); Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002).  This Court, accordingly, can compel the release of any records that do not satisfy the requirements of at least one exemption.  See Reporters Comm., 489 U.S. at 755.

1.   *Overall Sufficiency of Documentation and Explanations*

FOIA was drafted with the objective of affording the public maximum access to most government records.  See Vaughn v. Rosen, 484 F.2d 820, 823 (D.C. Cir. 1973).  The government, as a result, bears the burden of demonstrating that at least one exemption applies.  See id.  In order to assist a court in its *de novo* review of the withholdings and to allow the party seeking access to documents to engage in effective advocacy, the government must furnish "detailed and specific information demonstrating 'that material withheld is logically within the domain of the exemption claimed.'"  Campbell, 164 F.3d at 30 (quoting King v. U.S. Dep't of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987)).  This allows for "as full a public record as possible, concerning the nature of the documents and the justification for nondisclosure."  Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979).  Courts in this Circuit have stressed that the government cannot justify its withholdings on the basis of summary statements that merely reiterate legal standards or offer "far-ranging category definitions for information."  King, 830 F.2d at 221; see, e.g., Campbell, 164 F.3d at 30 (emphasizing that an agency's explanations will not suffice if they "'are conclusory, merely recit[e] statutory standards, or if they are too vague or sweeping'") (quoting Hayden, 608 F.2d at 1387).

While FOIA's individual exemptions impose their own tailored evidentiary burden, as a starting point, the government must meet five overarching requirements for each withholding.  See King, 830 F.2d at 224.  The government must:

> (1) [I]dentify the document, by type and location in the body of documents requested; (2) note that [a particular exemption] is claimed; (3) describe the document withheld or any redacted portion thereof, disclosing as much information as possible without thwarting the exemption's purpose; (4) explain how this material falls within one or more of the categories . . . ; and [if the exemption requires a showing of harm] (5) explain how disclosure

> of the material in question would cause the requisite degree of
> harm.

Id.

In circumstances where an in-depth description of a withholding would risk disclosure of sensitive information, and particularly where a confidential source might be compromised, the government may supplement its explanations with non-public affidavits and other documents for *in camera* review by the court.  See Simon v. Dep't of Justice, 980 F.2d 782, 784 (D.C. Cir. 1992) ("in camera review . . . is the best way to assure both that the agency is entitled to the exemption it claims and that the confidential source is protected").  *In camera* review, however, is "not a substitute for the government's obligation to provide detailed public indexes and justifications whenever possible."  Lykins v. U.S. Dep't of Justice, 725 F.2d 1455, 1463 (D.C. Cir. 1984); see also PHE, Inc. v. Dep't of Justice, 983 F.2d 248, 253 (D.C. Cir. 1998) ("*[I]n camera* review is generally disfavored," and is "not a substitute for the government's obligation to justify its withholding in publicly available and debatable documents.") (internal citations omitted).

The Vaughn Index requirement, however, is not as rigid as it might seem at first blush. The D.C. Circuit has noted that "context dictates [a court's] approach to the particularity required of agencies," Judicial Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 147 (D.C. Cir. 2006), going so far as to say that in certain circumstances,

> abstraction can aid court review when drawing from specific
> examples.  We have never required repetitive, detailed
> explanations for each piece of withheld information – that is, codes
> and categories may be sufficiently particularized to carry the
> agency's burden of proof.  Especially where the agency has
> disclosed and withheld a large number of documents,
> categorization and repetition provide efficient vehicles by which a
> court can review withholdings that implicate the same exemption
> for similar reasons.

Id.  This flexibility, however, is layered on a background presumption going back several decades that document-by-document explanations of withheld information are required.  See, e.g., King, 830 F.2d at 224 ("Vaughn's call for specificity imposes on the agency the burden of demonstrating applicability of the exemptions invoked as to each document or segment withheld.  Elsewhere we have defined the Vaughn index as 'consist[ing] of one document that adequately describes each withheld record or deletion and sets forth the exemption claimed and why that exemption is relevant.  Categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate.") (quoting Palsley v. CIA, 712 F.2d 686, 689 (D.C. Cir. 1983), vacated in part, 724 F.2d 201 (D.C. Cir. 1984)) (emphasis deleted; alteration in original).  This Circuit's cases seem to hint at the idea of a sliding scale inversely correlating the number of withheld documents and the level of detail required to justify their withholding.  That said, they also make clear that an agency is only permitted to provide an alternative to the document-by-document Vaughn Index where doing so would provide the Court and the requester with an equally strong basis for evaluating the agency's exemption claims in detail.

For example, if the government chooses to submit a short Vaughn Index containing abbreviated descriptions, it must supplement the index with detailed affidavits that do more than merely repeat the same generalized categorization of content.  See Judicial Watch, Inc. v. FDA, 449 F.3d 141, 146 (D.C. Cir. 2006); see also Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 861 (D.C. Cir. 1980) (index identifying "who wrote the memorandum, to whom it was addressed, its date, and a brief description of the memorandum," accompanied by affidavits drafted in "conclusory terms" deemed insufficient).  While the government need not furnish repetitive descriptions of the same type of document and may describe commonalities among its

withholdings, it must avoid resorting to explanation in generalities.  See Judicial Watch, 449

F.3d at 147.  The "grouping" of documents in the Vaughn Index may be permissible in certain

circumstances, particularly when the withholdings comprise multiple, duplicative records and

when the government's supporting affidavits are "sufficiently detailed to allow the district court

fairly to evaluate" the application of a claimed exemption to distinct categories of documents.

See Gallant v. NLRB, 26 F.3d 168, 173 (D.C. Cir. 1994); see also Landmark Legal Found. v.

Internal Revenue Service, 267 F.3d 1132, 1138 (D.C. Cir. 2001) ("It is not the agency's fault that

thousands of documents belonged in the same category, thus leading to exhaustive repetition.").

       In certain cases, agencies have been permitted to produce a Vaughn Index discussing a

representative sample of the withheld documents.  "Representative sampling is an appropriate

procedure to test an agency's FOIA exemption claims when a large number of documents are

involved."  Bonner v. Dep't of State, 928 F.2d 1148, 1151 (D.C. Cir. 1991); see also U.S. Dep't

of Justice, Guide to the Freedom of Information Act at 782-83 (2009 ed.).  Sampling transforms

"a voluminous FOIA exemption case [into] a manageable number of items that can be evaluated

individually through a Vaughn Index," yet a well-chosen sample can still be extrapolated from

"with some confidence."  Bonner, 928 F.2d at 1151.  For example, in Bonner, the sample

included 63 of the 1,033 partially withheld documents.  See id. at 1149.  In Meeropol v. Meese,

790 F.2d 942 (D.C. Cir. 1986), the sample contained 1% of the 20,000 totally or substantially

withheld documents, and none of the partially withheld documents.  See id. at 948, 956-57.  In

Weisberg, the court eventually sampled 93 documents.  See 745 F.2d at 1490.  Sampling,

however, "will yield satisfactory results only if the sample employed is sufficiently

representative, and if the documents in the sample are treated in a consistent manner."  Bonner,

928 F.2d at 1151.  Agencies using sampling to comply with FOIA have been cautioned to

provide "an explanation of how the documents were selected, in order to ensure that the documents in the index were truly representative." Shannahan v. Internal Revenue Service, 672 F.3d 1142, 1151 (9th Cir. 2012). The Court need not further discuss sampling since the government here has not sought this recourse.

Whatever the form, however, the substance of the government's submissions must meet a consistent standard. As the D.C. Circuit has long held, "[C]onclusory assertions of privilege will not suffice to carry the agency's burden." Senate of the Com. of Puerto Rico v. U.S. Dep't of Justice, 823 F.2d 574, 585 (D.C. Cir. 1987) (citing Coastal States, 617 F.2d at 861; Mead Data Cent. v. United States Dep't of the Air Force, 566 F.2d 242, 258 (D.C. Cir. 1977)). To that end, while the D.C. Circuit did not "endeavor an encompassing definition of 'conclusory assertion,'" it found that "for present purposes, it is enough to observe that where no factual support is provided for an essential element of the claimed privilege or shield, the label 'conclusory' is surely apt." Senate of the Com. of Puerto Rico, 823 F.2d at 585 (emphasis in original).

The Vaughn Index and declaration submitted by EOUSA fall well short of this standard, often simply because of the vast quantities of documents for which Defendant offers only one short paragraph of justification. See, e.g., EOUSA Vaughn Index at 2. DOJ provides no authority to show that submission of a "categorical" Vaughn Index, even with a supporting affidavit, is either a customary or acceptable means of discharging its evidentiary burden. Indeed, consistent precedent demonstrates that the contrary is true. As the Vaughn Court itself cautioned: "[I]t is unreasonable to expect a trial judge to do as thorough a job of illumination and characterization as would a party" who is familiar with the documents and who seeks to withhold them. Vaughn, 484 F.2d at 825. Likewise, Defendant cannot show that EOUSA's submissions here have provided enough detail for both Plaintiff and judicial review, see id., where it seeks to

13

withhold thousands of documents on so scant a record.  The <u>Vaughn</u> Index filed by EOUSA does not offer a useable point of reference to negotiate these thousands of pages of withholdings, a problem that is discussed in further detail in relation to each claimed FOIA exemption.

This Court, consequently, holds that EOUSA's <u>Vaughn</u> Index and explanations of the withholdings are insufficient as a whole.  On these grounds alone, the Court must deny the Motion for Summary Judgment as to those documents withheld by EOUSA.  If EOUSA does not produce the contested records, it must submit revised documentation that is sufficiently detailed and comprehensive to meet the evidentiary standards set out in <u>King</u>, 830 F.2d at 224, as well as the exemption-specific standards, which are discussed in detail in the sections that follow.

As the D.C. Circuit has noted, FOIA's evidentiary burden is likely to create significant costs for government agencies as they respond to requests, but "[t]he costs must be borne . . . if the congressional policy embodied in FOIA is to be well served." <u>Senate of the Com. of Puerto Rico</u>, 823 F.2d at 587.  The Court must follow this Circuit's law on FOIA, although this is the type of case that Congress might wish to bear in mind when debating whether to further extend that statute.  Here, the government has spent nearly 2,000 personnel hours – and will spend another significant amount of time responding to this Opinion – because one public-advocacy group was interested in a closed criminal investigation.  At a time of sequestration and further budget cuts, it may be worth considering how much of the government's time should be spent in chasing down thousands of documents and then formulating detailed justifications about their withholding.  The Court is loath to pile additional responsibility on DOJ, but finds its hands are tied: despite the Department's extensive and laudable efforts, it has yet to comply with FOIA's statutory requirements.

2.   *Applicability of Specific Exemptions*

Plaintiff's challenges to specific withholdings turn principally on the applicability of FOIA Exemptions 5, 6, 7(C), and 3.  See Pl.'s Opp. and Cross-Mot. at 8-22.  The Court will consider them in sequence.

a.   Exemption 5

FOIA Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Withholdings are restricted to "those documents, and only those documents, normally privileged in the civil discovery context."  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also United States v. Weber Aircraft Corp., 465 U.S. 792, 798-99 (1984).  In contrast to disclosures in that context, the needs of a particular plaintiff are irrelevant to a court's determination of whether a particular communication is exempt from disclosure under Exemption 5.  Martin v. Office of Special Counsel, Merit Sys. Prot. Bd., 819 F.2d 1181, 1184 (D.C. Cir. 1987) (citing Sears, Roebuck, 421 U.S. at 149).

Exemption 5 encompasses three distinct components relevant here – namely, the deliberative-process privilege (sometimes referred to as "executive privilege"), the attorney work-product privilege, and the attorney-client privilege.  Am. Immigration Council v. U.S. Dep't of Homeland Sec., 905 F. Supp. 2d 206, 216 (D.D.C. 2012).  In addition to meeting the distinct evidentiary burden for each relevant privilege of this exemption, the government must demonstrate that its withholdings satisfy the threshold requirement of "inter-agency or intra-agency memorandums."  5 U.S.C. § 552(b)(5).  As there is no dispute on this requirement, the Court can move to each of the three privileges.

i.    Deliberative-Process Privilege

The deliberative-process privilege of Exemption 5 "calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy," while "withholding [] all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." Sears, Roebuck, 421 U.S. at 153 (internal quotations omitted). In order to justify a withholding under this privilege, the government must prove two basic elements. First, it must demonstrate that the document qualifies as "pre-decisional" in the sense that it was "[a]ntecedent to the adoption of an agency policy." Jordan v. U.S. Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc), partially overruled on other grounds by Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1053 (D.C. Cir. 1981). Second, the government must show that the document is "deliberative," in that it forms "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975) (Vaughn II); see also Pub. Citizen, Inc. v. Office of Mgmt. and Budget, 598 F.3d 865, 876 (D.C. Cir. 2009) (explaining that "[a] document that does nothing more than explain an existing policy cannot be considered deliberative").

Over the years, courts in this Circuit have developed a substantial body of precedent to guide the government in formulating descriptions of its deliberative-process withholdings. A court's decision on the applicability of this privilege fundamentally "depend[s] upon the individual document and the role it plays in the administrative process." Coastal States, 617 F.2d at 867. The government, accordingly, bears the burden of situating the document within that process and must provide detailed information on the "nature of the decisionmaking authority vested in the office or person issuing the disputed document," Taxation with Representation

16

Fund v. Internal Revenue Service, 646 F.2d 666, 678 (D.C. Cir. 1981), as well as the "relative

positions in the agency's 'chain of command' occupied by the document's author and recipient."

Senate of the Com. of Puerto Rico, 823 F.2d at 586 (quoting Arthur Andersen & Co. v. Internal

Revenue Service, 679 F.2d 254, 258 (D.C. Cir. 1982)).  Indeed, in order to discharge its burden,

the government must specifically "establish[] what deliberative process is involved, and the role

played by the documents in issue in the course of that process."  Coastal States, 617 F.2d at 868

(citing Vaughn II, 523 F.2d at 1146).

　　　Here, the submissions by CRM and EOUSA diverge slightly.  CRM's Vaughn Index

describes the 39 documents it seeks to withhold on a document-by-document basis, identifying

the title or description of the document, its author and recipient if known, the date (if known),

and references to the specific FOIA exemptions at issue (including separating those Exemption 5

withholdings covered by the deliberative-process privilege and the work-product privilege).  See

CRM Vaughn Index.  The accompanying declaration provides additional detail about the specific

reason each document or, in two cases, each small group of documents qualifies for one or more

FOIA Exemptions.  For example, regarding Document 25, Cunningham avers:

> This ten-page document dated July 17, 2008, is a memorandum
> over-viewing the investigation of Representative Lewis. . . .
> Document Twenty-[five] is being withheld under FOIA Exemption
> 5 as attorney work product, containing a summary of facts and
> evidence related to an ongoing investigation as well as the
> attorney's legal analysis.  Multiple pages of this document also
> contain the handwritten notes of the receiving PIN Trial Attorney,
> and reflect a give-and-take commentary and analysis of the
> ongoing investigation.  The document is being withheld under
> Exemption 5's deliberative process privilege, as it reveals
> recommendations, comments, and investigatory choices that
> informed the ultimate decision whether to prosecute
> Representative Lewis and others.

<u>See</u> Cunningham Decl., ¶ 28.  While this level of detail is superior to that provided by EOUSA, it still falls short of FOIA's requirements, as it does not identify "the role played by the documents in issue in the course of [the deliberative] process" of deciding whether or not to indict Rep. Lewis.  <u>Coastal States</u>, 617 F.2d at 868.  The Court, therefore, is unable to determine the propriety of CRM's deliberative-process withholdings.

EOUSA's submissions, by contrast, are far thinner.  Its scant affidavit, which includes a mere paragraph explaining why nearly 4,000 documents are being withheld pursuant to the deliberative-process privilege, offers only circular justifications for the withholdings that parrot back the relevant standards.  <u>See</u> 2d Jolly Decl., ¶ 40.  The declaration avers only that "the documents are deliberative in nature because they discuss investigation strategies and analyze potential criminal claims or other legal issues," and that "to disclose the information provide [*sic*] would reveal pre-decisional communications among government personnel such as discussion of various legal issues, alternatives, and strategies."  <u>Id.</u>  The declaration makes no reference whatsoever to required elements of the deliberative-process privilege, including the dates the documents were created, <u>see</u> <u>Hussain v. U.S. Dep't of Homeland Sec.</u>, 674 F. Supp. 2d 260, 270 (D.D.C. 2009), the relative positions in the chain of command of the author and recipient, <u>see</u> <u>Senate of the Com. of Puerto Rico</u>, 823 F.2d at 586, the deliberative process involved, the role played by the documents in that process, <u>see Coastal States</u>, 617 F.2d at 868, and the nature of the author's decisionmaking authority.  <u>See</u> <u>Taxation with Representation Fund</u>, 646 F.2d at 679.  Without at least some of this information, the Court is simply unable to pass on EOUSA's deliberative-process claims at this juncture.

It may very well be that many of the redacted documents qualify for the protections of Exemption 5 for reasons of deliberative process.  Indeed, the D.C. Circuit has observed that "the

process leading to a decision to initiate, or to forego, prosecution is squarely within the scope of

this privilege; . . . 'Exemption [5] is tailor-made for the situation in which [a prosecutor's office

is] assessing the evidence it [is] compiling.  To expose this process to public scrutiny would

unnecessarily inhibit the prosecutor in the exercise of his traditionally broad discretion to assess

the case and decide whether or not to file charges.'"  <u>Senate of the Com. of Puerto Rico</u>, 823

F.2d at 585 n.38 (quoting <u>Fund for Constitutional Government v. Nat'l Archives & Records

Service</u>, 485 F. Supp. 1, 13 (D.D.C. 1987)).  Likewise, past cases have found that the

deliberative-process privilege often exempts the disclosure of documents that resemble a number

of those that CRM and EOUSA have submitted.  <u>See Judicial Watch, Inc. v. U.S. Dep't of

Homeland Sec.</u>, 880 F. Supp. 2d 105, 111-12 (D.D.C. 2012) (email exchanges discussing draft

responses to press inquiries); <u>Exxon Corp. v. Dep't of Energy</u>, 585 F. Supp. 690, 698 (D.D.C.

1983) (documents marked as "draft").  This Court, however, is not at liberty to draw such

conclusions based on mere inference and guesswork.  As other courts in this District have

emphasized: "Mere classification of a document as a 'draft document' does not end the inquiry;

the government must also prove that the document is pre-decisional and related to a deliberative

process." <u>Techserve Alliance v. Napolitano</u>, 803 F. Supp. 2d 16, 27 (D.D.C. 2011) (citing

<u>Coastal States</u>, 617 F.2d at 866).  Given the current state of Defendant's documentation, the

Court cannot agree that its withholdings are proper under the deliberative-process prong of

Exemption 5.

ii.    Attorney Work-Product Privilege

The attorney work-product prong of Exemption 5 extends to "documents and tangible

things that are prepared in anticipation of litigation or for trial" by an attorney.  Fed. R. Civ. P.

26(b)(3)(A).  As this Court has noted in the past, the work-product privilege is relatively broad,

encompassing documents prepared for litigation that is "foreseeable," if not necessarily

imminent.  See Am. Immigration Council, 905 F. Supp. 2d at 221.  The privilege is not endless,

however:

> While it may be true that the prospect of future litigation touches
> virtually any object of a [law-enforcement agency] attorney's
> attention, if the agency were allowed "to withhold any document
> prepared by any person in the Government with a law degree
> simply because litigation might someday occur, the policies of the
> FOIA would be largely defeated."

Senate of the Com. of Puerto Rico, 823 F.2d at 586-87 (quoting Coastal States, 617 F.2d at 865).

When reviewing a withholding under the work-product prong, the "'testing question' . . . is

'whether, in light of the nature of the document and the factual situation in the particular case,

the document can fairly be said to have been prepared or obtained because of the prospect of

litigation.'"  In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998) (quoting Senate of the Com.

of Puerto Rico, 823 F.2d at 586 n.42) (emphasis added).

　　　At a minimum, the government must demonstrate that the lawyer who prepared the

document possessed the "subjective belief that litigation was a real possibility, and that belief

must have been objectively reasonable."  In re Sealed Case, 146 F.3d at 884.  It follows that, in

order for the government to discharge its evidentiary burden, it must 1) provide a description of

the nature and contents of the withheld document, 2) identify the document's author or origin (by

job title or otherwise), 3) note the circumstances that surround the document's creation,

including the date the document was created, and 4) provide some indication of the type of

litigation for which the document's use is at least foreseeable.

　　　DOJ's withholdings under the work-product prong of Exemption 5 suffer the same

infirmities identified for its deliberative-process withholdings.  Here, again, Defendant's

purported justifications fail to provide the Court with sufficient information to evaluate its

attorney work-product claims.  EOUSA seeks to withhold nearly 4,000 documents under this privilege, but fails to provide any information regarding the dates of creation or the authors or recipients of any of the documents.  See Wilderness Soc'y v. U.S. Dept. of Interior, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (where "documents withheld under the work-product privilege [do not] indicate their author or recipient, [the court] has no context in which to assess whether the attorney work-product privilege protects the documents from disclosure").  Likewise, the Criminal Division fails to provide any information regarding its work-product claims beyond the bare assertion that "documents one and four through thirty-six are records that reflect the sorting and assembling of factual information, as well as legal analyses and recommendations of DOJ attorneys about whether to prosecute Representative Lewis and other third parties.  These documents were gathered as part of an investigation of specific wrongdoing during which the government was attempting to build a case against suspected wrongdoers."  See Cunningham Decl., ¶ 16.  While CRM once again makes a more promising start than its counterpart EOUSA, its assertions still fall short: they are still missing the kind of document-by-document information regarding the dates of creation, the authors and recipients, and some more detailed description of the documents' contents required by the work-product privilege.

While the Court recognizes that the government must walk a fine line between under- and over-disclosure, the work-product prong of Exemption 5 requires that agencies make a good-faith effort to describe the nature of each individual document and the particular circumstances that make its use in litigation foreseeable.  See In re Sealed Case, 146 F.3d at 884; Senate of the Com. of Puerto Rico, 823 F.2d at 586 n.42.  Without such information, the Court cannot distinguish true work-product documents from those that happen to have been penned by someone with a law degree.

iii.     Attorney-Client Privilege

Exemption 5 also extends to attorney-client privileged documents – namely, confidential

communications from clients to their attorneys, as well as communications from attorneys to

their clients containing confidential information supplied by the client.  See Tax Analysts v.

Internal Revenue Service, 117 F.3d 607, 618 (D.C. Cir. 1997).[1]  As with the other prongs of

Exemption 5, it falls to the government to prove, through "detailed and specific information,"

that the withheld information falls within the domain of the attorney-client privilege.  See

Campbell, 164 F.3d at 30.  In order to prevail on a motion for summary judgment in this area, the

government must substantiate five essential elements in its supporting documentation:

> (1) [T]he holder of the privilege is, or sought to be, a client; (2) the
> person to whom the communication is made is a member of the bar
> or his subordinate and, in connection with the communication at
> issue, is acting in his or her capacity as a lawyer; (3) the
> communication relates to a fact of which the attorney was informed
> by his client, outside the presence of strangers, for the purpose of
> securing legal advice; and (4) the privilege has been claimed by the
> client. Additionally, [(5)] a "fundamental prerequisite to the
> assertion of the privilege" is "confidentiality both at the time of the
> communication and maintained since."

Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec., 841 F. Supp. 2d 142, 153-54 (D.D.C. 2012)

(citing In re Sealed Case, 737 F.2d 94, 98-99 (D.C. Cir. 1984); Coastal States, 617 F.2d at 863);

accord Fed. Trade Comm'n v. GlaxoSmithKline, 294 F.3d 141, 146 (D.C. Cir. 2002).

"In the governmental context, the 'client' may be the agency and the attorney may be an

agency lawyer."  Tax Analysts, 117 F.3d at 618.  Where an agency lawyer serves in a mixed

capacity that involves responsibilities both within and "outside the lawyer's sphere," however,

---

[1] While Defendant asserts that Plaintiff has waived its objection to the documents withheld under the
attorney-client privilege because it failed to address the issue in its Opposition and Cross-Motion, see Def. Rep. at
12 n.4, Plaintiff disagrees, arguing that because it objects to the sufficiency of the government's submissions as a
whole, it has preserved its objection to each individual exemption claim.  See Pl. Rep. at 7 n.3.  The Court finds the
issue moot, as it has found Defendant's submissions insufficient as a whole.  See Section III.B.1, *supra*.

the agency employee's communications will only be protected to the extent that they involve his or her professional, legal capacity.  In re Sealed Case, 737 F.2d at 99.

As with the other prongs of Exemption 5, the Court simply cannot issue summary judgment on the record assembled here.  Defendant provides, once again, one paragraph of justification for its attorney-client withholdings (which include only those records in Category 8), saying that "[t]he records in Category 8 contain also consist [sic] of attorney-client privileged communications regarding possible AUSA conflicts of interests [sic].  These documents consist of confidential opinions and advice rendered by the Office of the General Counsel, EOUSA, to its client, the USAO-CAC."  See 2d Jolly Decl., ¶ 39.  This brief justification fails to provide the Court with much of the information required to substantiate an attorney-client privilege claim.  It tends to establish that the holder of the privilege is a client and hints at the idea that the topic of discussion (conflicts of interest) was legal in nature, that "the person to whom the communication is made is a member of the bar . . . and, in connection with the communication at issue, is acting in his or her capacity as a lawyer," and that the privilege is claimed by the purported client.  It does not, however, reveal – for example – whether "the communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice."  See Judicial Watch, 841 F. Supp. 2d at 153-54.  As a result, the Court cannot grant summary judgment to the Defendant on the basis of its attorney-client privilege claims.

b.   Exemptions 6 and 7(C)

EOUSA attempts to withhold many of the documents in this case, at least in part, under Exemptions 6 and 7(C).  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5

U.S.C. § 552(b)(6).  Exemption 7(C) excludes "records of information compiled for law

enforcement purposes . . . to the extent that production of such law enforcement records or

information . . . could reasonably be expected to constitute an unwarranted invasion of personal

privacy."  Id. § 552(b)(7)(C).  Both provisions require agencies and reviewing courts to "balance

the privacy interests that would be compromised by disclosure against the public interest in the

release of the requested information."  Beck v. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir.

1993) (quoting Davis v. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

        Although both exemptions require agencies and reviewing courts to undertake the same

weighing of interests, the balance tilts more strongly toward nondisclosure in the context of

Exemption 7(C) because "Exemption 7(C)'s privacy language is broader than the comparable

language in Exemption 6 in two respects."  Reporters Comm., 489 U.S. at 756.  First, Exemption

6 encompasses "clearly unwarranted" invasions of privacy, while Exemption 7(C) omits the

adverb "clearly."  See id.  Second, Exemption 6 prevents disclosures that "would constitute" an

invasion of privacy, while Exemption 7(C) targets disclosures that "could reasonably be

expected to constitute" such an invasion.  See id.  Both differences are the result of specific

amendments, reflecting Congress's conscious choice to provide greater protection to law-

enforcement materials than to personnel, medical, and other similar files.  See id.  As a result,

courts have held that Exemption 7(C) "establishes a lower bar for withholding material [than

Exemption 6]," ACLU v. U.S. Dep't of Justice, 655 F.3d 1, 6 (D.C. Cir. 2011); see also Beck v.

Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993).   The Court, accordingly, need only

address whether DOJ has properly withheld these documents under Exemption 7(C).

        At an earlier stage in this proceeding, Plaintiff conceded that the records at issue were

prepared for law-enforcement purposes, and so Exemption 7(C) applied.  See CREW I, 846 F.

Supp. 2d at 71.  The sole question before the Court at that stage was whether DOJ properly

balanced those competing interests when it <u>categorically</u> refused to provide the records CREW

requested.  <u>Cf.</u> <u>ACLU</u>, 655 F.3d at 6. In answering that question, this Court found:

> "In this case, however, appellants have identified a public interest
> cognizable under FOIA in disclosure," <u>Nation Magazine</u>, 71 F.3d
> at 895, and a significant one at that.  Where, as here, there are
> significant interests on both sides of the scale, discerning whether
> the balance favors privacy with respect to a set of documents the
> contents of which remain unidentified becomes more difficult.
> The weights of those interests, furthermore, may vary with respect
> to each document within the responsive file. Determining whether
> withholding is justified, therefore, requires a more nuanced
> analysis than can be undertaken without an account of the records
> in the Government's possession.  The Court is simply not able to
> come to a conclusion as to the balance between the privacy and
> public interests at this level of generality.

<u>CREW I</u>, 846 F. Supp. 2d at 75-76.  Now, Defendant argues an almost identical position to that

which it argued earlier in this case, asserting that there was "no legitimate public interest in the

release of personal, non-public information concerning an individual who may have been a

suspect . . . or subject of investigative interest in a possible federal investigation," <u>see</u> 2d Jolly

Decl., ¶ 47, and that "the privacy interests of these individuals in protecting their names and

identifying information from disclosure outweighed any public interest in disclosure."  <u>See</u>

Cunningham Decl., ¶ 33.

        Plaintiffs argue that the agency is barred from taking this position by the "law-of-the-

case" doctrine.  <u>See</u> Pl.'s Opp. and Cross-Mot. at 21 (citing <u>Crocker v. Piedmont Aviation</u>, 49

F.3d 735, 739 (D.C. Cir. 1995)).  The Court need not go so far.  Instead, it finds that as with

Defendant's withholdings under Exemptions 5 and 3, the documents and portions of documents

withheld under Exemptions 6 and 7(C) may well be exempt from disclosure, but that the

government has yet to provide Plaintiff and this Court with sufficient information to come to

such a conclusion.  Hewing to the same guidance provided earlier in this Opinion with regard to

sampling, categorization, and other alternative means of meeting the <u>Vaughn</u> Index requirement,

the Court repeats that the government must provide additional information regarding its

Exemption 6 and 7(C) withholdings so as to allow the Court to determine how "[t]he weight of

those interests . . . may vary with respect to each document within the responsive file."  <u>CREW I</u>,

846 F. Supp. 2d at 75-76.  As Plaintiff does not challenge the government's withholding of the

names and identifying information of law-enforcement officials and other government attorneys,

or third parties other than Rep. Lewis, <u>see</u> Pl.'s Opp. and Cross-Mot. at 20, Defendant need only

provide such supporting documentation where it seeks to withhold information concerning Rep.

Lewis himself.

        c.  Exemption 3

      EOUSA seeks to withhold some 3,818 documents under Exemption 3, which covers

records "specifically exempted from disclosure by statute . . . [provided that such statute either]

(A)(i) requires that the matters be withheld from the public in such a manner as to leave no

discretion on the issue; or (A)(ii) establishes particular criteria for withholding or refers to

particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  The relevant statute here –

Federal Rule of Criminal Procedure 6(e) – bars the disclosure of matters occurring before a

grand jury.  <u>See</u> Fed. R. Crim. P. 6(e)(2)(B).  Because it was affirmatively enacted by Congress,

Rule 6(e) is recognized as a "statute" for Exemption 3 purposes.  <u>See</u> <u>Fund for Constitutional</u>

<u>Gov't. v. Nat'l Archives & Records Serv.</u>, 656 F.2d 856, 867 (D.C. Cir. 1981).  The Rule's

grand-jury-secrecy requirement is applied broadly and embraces any information that "tend[s] to

reveal some secret aspect of the grand jury's investigation, [including] the identities of witnesses

or jurors, the substance of testimony, the strategy or direction of the investigation, the

deliberations or questions of jurors, and the like." <u>Lopez v. Dep't. of Justice</u>, 393 F.3d 1345,

1349 (D.C. Cir. 2005) (internal quotation marks omitted).  In the absence of a statutory exception

to the general presumption of grand jury secrecy, Rule 6 is "quite clear that disclosure of matters

occurring before the grand jury is the exception and not the rule," and "the rule's ban on

disclosure is for FOIA purposes absolute and falls within . . . Exemption 3." <u>Fund for</u>

<u>Constitutional Gov't.</u>, 656 F.2d at 868.

In support of its withholdings under Exemption 3, the Department again offers limited

justification, saying only that "EOUSA has invoked Exemption 3 . . . to withhold information

revealing the names of grand jury targets, witnesses, and individuals assisting in the grand jury

investigation, and information that may reveal the scope and direction of a grand jury proceeding

pursuant to Exemption 3, F.R.Cr.P 6(e)," and referring back to documents in "Categories 1-2, 4-

7, 9-13." <u>See</u> 2d Jolly Decl., ¶ 35.  Those categories include nearly 4,000 documents.  While,

once again, it is entirely possible that all the documents at issue here can be withheld under

Exemption 3, the Court is unable to make such a determination on the record currently before it.

As Plaintiff correctly notes, "Rule 6(e) does not cover all information developed during the

course of a grand jury investigation, but only information that would reveal . . . [what] actually

occurred before the grand jury." <u>In re Complaint Against Circuit Judge Richard D. Cudahy</u>, 294

F.3d 947, 951 (7th Cir. 2002).  Once again, this is a fact-intensive, document-specific inquiry.

Because the Court is unable to resolve this issue at the altitude Defendant seems to desire, it will

again deny Defendant's Motion for Summary Judgment and grant Plaintiff's Cross-Motion with

respect to the Exemption 3 withholdings.

3.   *Segregable Material*

At present, the Court need not address Plaintiff's claim that Defendant has failed to release all reasonably segregable information from its withholdings.  To aid in the preparation of Defendant's further explanations of the withholdings, the Court wishes to make explicit this Circuit's precedent on segregability of non-exempt information.  While the government is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013), this presumption of compliance does not obviate the government's obligation to carry its evidentiary burden and fully explain its decisions on segregability.  See Mead Data, 566 F.2d at 261.  Once EOUSA and CRM have specifically identified the exempted portions of their records and described them in accordance with the requirements set out above, see Sections III.B.2.a-b, *supra*, they must also provide descriptions of excerpts deemed to be non-segregable, with explanations as to these decisions.  See Mead Data, 566 F.2d at 261.

As to segregability, CRM merely asserts that "following a line-by-line review, all reasonably segregable, non-exempt information has been released in full or in part to the plaintiff.  The documents withheld in their entirety contain no meaningful portion that could be released without destroying the integrity of the document or without disclosing third-party interests."  See Cunningham Decl., ¶ 34.  For its part, EOUSA contends only that "[e]ach document was evaluated to determine if any information could be segregated and released.  EOUSA has segregated and released in full the non-exempt responsive records to Plaintiff.  All of the remaining records fall within one or more of the exemptions set forth above and are not segregable without revealing this protected information."  See 2d Jolly Decl., ¶ 51.  Neither will suffice to discharge this burden.  As the D.C. Circuit stressed in Mead Data, "[U]nless the

28

segregability provision of the FOIA is to be nothing more than a precatory precept, agencies must be required to provide the reasons behind their conclusions in order that they may be challenged by FOIA plaintiffs and reviewed by the courts."  566 F.2d at 261.  The Court trusts that Defendant will follow this guidance.

**IV.      Conclusion**

   For the forgoing reasons, the Court will deny Defendant's Motion for Summary Judgment and grant Plaintiff's Cross-Motion in part and deny it in part.  If DOJ does not produce the requested documents, it must provide full explanations of its withholdings under all relevant FOIA Exemptions for any records and redacted portions not made available to Plaintiff.  An Order consistent with this Opinion shall issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  July 25, 2013