UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>    Defendant. | Civil Action No. 11-1021 (JEB) |

### MEMORANDUM OPINION

As Chairman of the House Appropriations Committee, former Congressman Jerry Lewis (R-CA) had substantial say over the fate of billions of federal dollars. When some of those funds landed in the hands of clients of Lewis's close friends – and when those friends and clients donated some 37 percent of the $1.3 million that Lewis's political action committee received from 1999 to 2005 – a federal investigation followed. See Jerry Kammer, A Steady Flow of Financial Influence, San Diego Union Tribune (Dec. 23, 2005), available at http://goo.gl/e3Gqj4. Nothing came of that inquiry, though, and the Department of Justice ultimately declined to press charges. Perhaps suspicious of that outcome, Plaintiff Citizens for Responsibility and Ethics in Washington, a watchdog group, brought this action under the Freedom of Information Act seeking records related to the Department's decision not to charge Lewis with a crime.

In a preliminary Opinion on summary judgment, this Court rejected DOJ's attempt to categorically exclude from disclosure virtually all of the materials CREW sought. In response, the Government released over two thousand documents at least in part, but it also withheld

thousands under various specific FOIA exemptions. Although the Court was impressed by Defendant's efforts to search and catalog those materials, it concluded in a separate Opinion that the statute required that the agency offer further documentation to support its decision to invoke each exemption. The Government then produced an index describing in some detail a representative sample of responsive documents, and it now moves for summary judgment for the third time. Nearly three years and more than two thousand man-hours after this controversy began, the Court can finally conclude that Defendant has satisfied its FOIA obligations. It will thus grant DOJ summary judgment on all counts.

## I. Background

Past Opinions described in some detail the factual background of this suit, so the Court will note here only the facts that are particularly relevant to the pending Cross-Motions for Summary Judgment. On January 24, 2011, CREW submitted a FOIA request seeking "all records related to the investigation of Rep. Jerry Lewis (R-CA) conducted by [the Department of Justice] and the Federal Bureau of Investigation ('FBI') that are not covered by grand jury secrecy . . . including but not limited to DOJ's decision not to bring criminal charges against him." Pl. Mot. and Opp. at 2.

The Government responded that all information that would arise under such a search would be exempt from disclosure under FOIA, so it declined to do anything further. Id. at 3. Although the Department's FOIA-appeals panel had not yet passed on the issue, CREW brought suit in this Court on June 2 of that same year. Id.

In the ensuing months, this Court twice ordered the Government to provide more information regarding the documents it was withholding. See Citizens for Responsibility and Ethics in Washington v. Dep't of Justice (CREW I), 846 F. Supp. 2d 63 (D.D.C. 2012); Citizens

for Responsibility and Ethics in Washington v. Dep't of Justice (CREW II), 955 F. Supp. 2d 4 (D.D.C. 2013). Ordinarily, DOJ would have had to justify each of its withholdings by providing CREW with an index that "describe[s] each withheld document, state[s] which [FOIA] exemption the agency claims for each withheld document, and explain[s] the exemption's relevance." Johnson v. Exec. Office for U.S. Att'ys, 310 F.3d 771, 774 (D.C. Cir. 2002); see also Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). Rather than force the agency to defend each of the thousands of withholdings at issue in this case, however, the Court ruled that DOJ could sample four percent of the withheld documents and then produce a Vaughn Index focused on this smaller, representative collection. See Minute Order of Aug. 27, 2013; see also Bonner v. Dep't of State, 928 F.2d 1148, 1151 (D.C. Cir. 1991) (approving sampling of approximately five percent of withheld documents); Meeropol v. Meese, 790 F.2d 942, 948, 956-57 (D.C. Cir. 1986) (approving sampling of approximately one percent of withheld documents).

True to this agreement, on November 4, 2013, DOJ produced a representative-sample Vaughn Index meant to provide CREW and the Court with the information necessary to determine whether its withholdings under Exemption 3 (grand-jury materials), Exemption 5 (attorney work product, attorney-client privilege, and deliberative documents), and Exemptions 6 and 7(C) (personal privacy) were appropriate. See Def. Mot., Exh. 2 (Sample Vaughn Index). In order to assist the Court in that analysis, the agency also produced each of the 168 sampled documents for *in camera* review. See Simon v. Dep't of Justice, 980 F.2d 782, 784 (D.C. Cir. 1992) ("[I]n camera review . . . is the best way to assure both that the agency is entitled to the exemption it claims and that the confidential source is protected."). CREW, for its part, has since dropped its challenge to the Government's decision to withhold certain information under Exemption 3 and Exemption 5's attorney-client privilege, see Pl. Mot. and Opp. at 6 n.4, and it

3

forswears any challenge to DOJ's withholding of the personal information of individuals other than Rep. Lewis under Exemptions 6 and 7(C).  See CREW II, 955 F. Supp. 2d at 27.  In addition, although CREW sent the original request to three separate federal law-enforcement agencies, the only issues that remain pertain to the Executive Office for United States Attorneys (EOUSA), a component of the Department.  See Def. Mot. at 1 n.1.

As a result, all that remains before the Court is Plaintiff's challenge to DOJ's decision to withhold: (1) documents under Exemption 5's attorney-work-product and deliberative-process privileges; (2) documents that are alleged to relate to Rep. Lewis and that were withheld under Exemptions 6 and 7(C); and (3) documents turned up during the agency's search but that it determined were not responsive to CREW's FOIA request.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact is one that would change the outcome of the litigation.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  In the event of conflicting evidence on a material issue, the Court is to construe the evidence in the light most favorable to the non-moving party.  See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).  Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary.  Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious," however, the Freedom of Information Act "expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

## III. Analysis

Congress enacted FOIA in order "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The Court will first address the exemptions DOJ invokes to justify withholding the documents, turn next to the segregability of any documents that were properly withheld, and conclude by assessing CREW's arguments regarding the non-responsive records and sampling errors. In the end, the Court concludes that summary judgment for DOJ is appropriate on each of those issues.

A. Exemptions

FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person," 5 U.S.C. § 552(a)(3)(A), unless those records fall into one of the categories of information that are exempt from disclosure. See 5 U.S.C. § 552(b)(1)-(9). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(3); Reporters Comm., 489 U.S. at 755.

This dispute centers on whether DOJ properly claimed the protection of FOIA Exemptions 5, 6, and 7(C). The Court will begin by assessing the applicability of the privileges in Exemption 5, and it will then consider the personal-privacy exemptions – 6 and 7(C) – together.

1. *Exemption 5*

FOIA Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). In other words, under Exemption 5, an agency may withhold "those documents, and only those documents, normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also United States v. Weber Aircraft Corp., 465 U.S. 792, 798-99 (1984). Exemption 5 encompasses three distinct components: the attorney-work-product privilege, deliberative-process privilege (sometimes called "executive privilege"), and attorney-client privilege. Am. Immigration Council v. Dep't of Homeland Sec., 905 F. Supp. 2d 206, 216 (D.D.C. 2012). The first two are at issue here.

"The attorney-work-product prong of Exemption 5 extends to 'documents and tangible things that are prepared in anticipation of litigation or for trial' by an attorney." Am. Immigration Council, 905 F. Supp. 2d at 221 (quoting Fed. R. Civ. P. 26(b)(3)(A)). As this Court has noted in the past, the work-product privilege is relatively broad, encompassing documents prepared for litigation that is "foreseeable," even if not necessarily imminent. See id. The privilege, however, is not endless. No doubt potential future litigation "touches virtually any object of a [law-enforcement-agency] attorney's attention," but "if the agency were allowed to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated." Senate of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 586-87 (D.C. Cir. 1987) (internal quotation marks omitted). When reviewing a withholding under the work-product prong, then, the "'testing question' . . . is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998) (quoting Senate of Puerto Rico, 823 F.2d at 586 n.42) (emphasis added).

As this Court observed in its second Opinion in this case, this means that the Government must at least demonstrate that the lawyer who prepared the document possessed the "subjective belief that litigation was a real possibility, and that belief [was] objectively reasonable." Crew II, 955 F. Supp. 2d at 19 (citing In re Sealed Case, 146 F.3d at 884). It follows that, in order for the Government to discharge its evidentiary burden, it must 1) provide a description of the nature and contents of the withheld document, 2) identify the document's author or origin, 3) note the circumstances that surround the document's creation, and 4) provide some indication of the type of litigation for which the document's use is at least foreseeable.

7

Defendant's original justifications did not provide the Court with sufficient information to evaluate its attorney-work-product claims, as the agency "fail[ed] to provide any information regarding the dates of creation or the authors or recipients of" any of the more than three thousand documents it sought to withhold under this privilege. See id. In the intervening months, however, it has remedied that deficiency; the materials it has submitted this time around – the Sample Vaughn Index, the Third Declaration of Vinay Jolly, and the documents provided to the Court for *in camera* review – are, together, enough for the Court to proceed to the substantive issue: whether those documents actually do constitute attorney work product of the kind that is exempt from FOIA disclosure.

And on that question, the Court finds in favor of EOUSA. On their face, most of the documents the Government seeks to withhold appear to be classic attorney work product, the disclosure of which would risk putting the Government lawyers' strategy on public display. These records include research and analysis, as well as recommendations about possible courses of action, created in preparation for litigation. See, e.g., Sample Vaughn Index, Documents 51, 59, 65, 102, 105, 107-109 (memoranda and communications regarding collection and evaluation of evidence and investigation strategies); Documents 123, 125, 130, 134, 136-39, 155-58 (legal research, notes, memoranda, drafts, and outlines regarding development of investigation).

Although CREW may take exception to EOUSA's treatment of those documents, it appears to limit its challenge to a subset of records that encompass communications between attorneys and staff regarding the investigation – what CREW calls "administrative documents." See Opp. at 7. Those records, however, are also the type of material that could compromise Government attorneys' preparation for litigation. Releasing "emails concerning the scheduling of phone calls and meetings," Opp. at 6, for example, could allow the public to infer when and

how attorneys reacted to events during the investigation. "[D]ocuments concerning the staffing of the investigation or 'resource allocation,'" id., similarly could reflect the attorneys' legal theories, evaluation of evidence, and investigative strategy by revealing aspects of the litigation attorneys considered most important. Internal e-mails "concerning media reports or articles, inquiries or third party commentary," id., likewise could reveal the timing of and strategy behind case-related decisions, not to mention that they could provide a direct window onto how those attorneys perceived the public's reaction to the potential case, which could be a factor in pre-litigation strategy. In short, an attorney's mental impressions and strategies can be revealed even by documents that may, at first glance, be characterized as "administrative" rather than "substantive."

None of the cases CREW cites nor the arguments it fashions call that conclusion into question. The group focuses its attention on the novel claim that so-called "administrative" documents fall outside the protection of the work-product privilege. On close examination, however, the cases it cites for that proposition fail to provide support. Hill Tower, Inc. v. Dep't of the Navy, 718 F. Supp. 562 (N.D. Tex. 1988), for example, drew no such distinction. Rather, the court there made the factual determination that the Navy manual at issue was not created in anticipation of litigation because it did not include the "express language" required by Navy regulations to indicate that a document was to be used for that purpose. See id. at 567. No such regulation appears to apply here. Zander v. Dep't of Justice, 885 F. Supp. 2d 1 (D.D.C. 2012), is similarly of little help. In that case, the court determined that two e-mails did not fall under the aegis of the attorney-work-product doctrine because they were communications to and from clients regarding the litigation process, rather than actual preparation by attorneys for litigation.

9

Id. at 11. Here, in contrast, the challenged documents are mostly communications between attorneys and their staff about the progress of potential litigation.

Even if the cases did support the distinction, moreover, Plaintiff's characterization of the contested documents as "administrative" fails to move the Court. CREW would have the Court believe that Document 25, for example, amounts to nothing more than "instructions to staff on work related activities." Opp. at 6-7. As the Sample Vaughn Index and *in camera* review make clear, however, that record is far more consequential, as it implicates the preservation of specific evidence to be used in potential litigation. See Sample Vaughn Index at 5. Document 36 is of similar import, as it details communications between EOUSA attorneys about whom to interview as part of the Lewis investigation, not just the "logistics" of interviews. See id. at 8. CREW cites a litany of other documents whose contents are supposedly merely administrative, but a glance at the records themselves belies that notion. See id. at 9 (describing Document 42, which discusses potential witnesses, not just generic "internal transfer of electronic files"); id. at 19 (detailing contents of Document 88, which lists potential persons of interest, not just FBI document names); id. at 35 (addressing Document 160, which discusses potential witnesses and interviewees, not just the "preparation of binders").

Finally, the very terms of CREW's FOIA request support the Court's conclusion. In that request, the group sought "records related to the investigation of Rep. Jerry Lewis." See Compl., ¶ 6. Where a FOIA request "focuses specifically on documents and communications related to a particular course of litigation," it is reasonable for the Court to infer that the work-product privilege will likely apply. Cf. Judicial Watch, Inc. v. Dep't of Housing & Urban Dev't, No. 12-1785, 2014 WL 788353, at *7 & n.7 (D.D.C. Feb. 28, 2014) (finding plaintiff's arguments regarding attorney work product "disingenuous" in light of that fact); Citizens for Responsibility

& Ethics in Washington v. Dep't of Justice, 949 F. Supp. 2d 225, 233 (D.D.C. 2013) (concluding that "the scope of the document request itself supports the Court's conclusion" that the Government's documents are attorney work product).

Weighing all of the circumstances together, the Court concludes that EOUSA's decision to invoke the protection of Exemption 5's attorney-work-product privilege was entirely proper. Because the Government does not claim the protection of the deliberative-process privilege with respect to any documents not protected by the attorney-work-product privilege, moreover, the Court need not analyze the application of the former privilege here.

2. *Exemptions 6 and 7(C)*

EOUSA has, however, withheld dozens of documents, at least in part, solely under Exemptions 6 and 7(C). Those twin privacy exemptions protect, respectively, "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), and "records of information compiled for law enforcement purposes . . . to the extent that production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." Id. § 552(b)(7)(C). Both provisions require agencies and reviewing courts to "balance the privacy interests that would be compromised by disclosure against the public interest in the release of the requested information." Beck v. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting Davis v. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992)).

Months ago, Plaintiff conceded that the records at issue were prepared for law-enforcement purposes, and so both privacy exemptions applied. See CREW I, 846 F. Supp. 2d at 71. The sole question before the Court at earlier stages in this litigation, therefore, was whether DOJ properly balanced the competing interests when it refused to provide the records CREW

had requested. See CREW II, 955 F. Supp. 2d at 22. The Court noted, moreover, that "[a]s Plaintiff d[id] not challenge the Government's withholding of the names and identifying information of law-enforcement officials and other government attorneys, or third parties other than Rep. Lewis, Defendant need only provide such supporting documentation where it seeks to withhold information concerning Rep. Lewis himself." Id. at 22-23.

This procedural observation, it turns out, decides the personal-privacy issue. While Defendant seeks to withhold information in more than three thousand documents under the personal-privacy exemptions, all but a few of those records are immune from disclosure under the attorney-work-product privilege. See Section III.A.1, *supra*. The remaining records, moreover, do not contain information regarding Rep. Lewis – they instead address other officials and third parties – and, as a result, CREW has conceded the propriety of those withholdings. The only question that remains, then, is whether anything in the withheld documents is segregable from the protected information. The Court now turns to that question.

B. Segregable Material

FOIA requires that "[a]ny reasonably segregable portion of a record . . . be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Mead Data Central, Inc., v. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

Although Plaintiff does not renew its segregability argument now that the Court has reached the end of the road on the merits, the Court will nonetheless address that question, given that it was a subject of prior dispute in this case and that the Court, in any event, has a *sua sponte* obligation to address the issue. See Johnson, 310 F.3d at 776. In particular, the Court must

decide whether the Government must disclose any information from the documents withheld pursuant to the attorney-work-product privilege or from those protected under the personal-privacy exemptions. (As the rest of the documents are no longer contested, the Court need not address their segregability.)

It is true that under the deliberative-process privilege, factual data in otherwise protected documents may have to be segregated and produced. See Judicial Watch, Inc. v. Dep't of Justice, 432 F.3d 366, 371-72 (D.C. Cir. 2005) (citing Martin v. Office of Special Counsel, 819 F.2d 1181, 1185-86 (D.C. Cir. 1987)). "The work-product doctrine," in contrast, "simply does not distinguish between factual and deliberative material." Martin, 819 F.2d at 1187. Instead, "[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under Exemption 5." Tax Analysts v. IRS, 117 F.3d 607, 620 (D.C. Cir. 1997). In other words, factual material is itself privileged when it appears within documents that are attorney work product, so if a document is protected as work product, then a segregability analysis is not required. Judicial Watch, 432 F.3d at 371. As a result, the entire contents of the large majority of the documents at issue in this case – that is, the facts, law, opinions, and analysis that make up EOUSA's work product – are completely exempt from disclosure under FOIA.

The personal-privacy exemptions – 6 and 7(C) – conversely, are subject to segregability analysis. In this case, however, Plaintiff has conceded that the agency properly withheld the personal information of third parties. On three of the sampled documents, no other information was withheld, and so no segregability analysis is required. Having reviewed the two others *in camera* – both e-mails between DOJ staff members that were withheld in full – moreover, the Court concludes that "the excision of exempt information [in those documents] would . . .

13

produce an edited document with little informational value." Mays v. Drug Enforcement Admin., 234 F.3d 1324, 1327 (D.C. Cir. 2000) (citation omitted). All that would remain would be a few stray salutations, pleasantries, and the like. Consequently, the agency need not produce any material from those records. Id.

### C. Sample Errors

This brings the Court, finally, to a series of minor sampling errors that, Plaintiff argues, call into question the Government's entire endeavor. First, CREW contends that DOJ improperly designated four documents in the sample as "non-responsive." Such documents are simply not subject to the statute's disclosure requirements, and agencies may decline to release such material without invoking a statutory exemption. See 5 U.S.C. § 552(a)(3)(A) ("[E]ach agency, upon any request for records which . . . reasonably describes such records . . . shall make the records promptly available to any person."). That is, while most FOIA cases deal with documents that are located and then withheld under a particular exemption, non-responsive records need no such justification. See Competitive Enterprise Inst. v. EPA, No. 12-1617, 2014 WL 308093, at *7 (D.D.C. Jan. 29, 2014).

CREW nevertheless concludes that because DOJ picked up the four contested documents in its original search and did not label them as non-responsive at the outset, this must be "a tactic to avoid releasing documents that otherwise are not subject to a FOIA exemption." Opp. at 18. This argument, however, misses the mark, as the Court has reviewed the documents *in camera* and concludes that they are, in fact, not responsive to Plaintiff's FOIA request and need not be produced. CREW should have known this where, for example, one of the documents is an e-mail exchange discussing the FOIA request itself, as opposed to the actual Lewis investigation that was the subject of the request. See Mot. at 26 (describing Document 45 as an "e-mail

14

exchange . . . related to CREW's January 24, 2011 FOIA request"). Add to this the fact that, at best, these errors suggest only that there may be more non-responsive documents – and fewer relevant ones – in the full set of records, and the Court concludes that this issue deserves no further attention.

Nor does CREW's last argument call the Government's effort into question. The organization observes that, on its third review, DOJ identified two documents among the 168 sampled records that were improperly withheld and thus could be released. See Opp. and Cross-Mot. at 19. It concludes from this fact that all of the agency's withholdings – or, at least, all of the withholdings similar to those two documents – are suspect and that, as a result, the agency should be required to re-sample and reassess its decision to withhold all six thousand responsive documents it has identified. The weight of the cases, however, does not permit that conclusion. Indeed, the D.C. Circuit has held repeatedly that even if an agency's withholdings "do not survive inspection," other documents must be released only if the "error rate" is "unacceptably high." See Bonner, 928 F.2d at 1154. Two mistakes out of 168 documents, however – an error rate of just over one percent – does not come close to the kind of error rate that has prompted courts to require further disclosures. See, e.g., Schoenmann v. FBI, 763 F. Supp. 2d 173, 188 (D.D.C. 2011) (Plaintiff "has cited no authority within this Circuit, and the Court is aware of none, providing that a 12.9 percent error rate within the representative sample is sufficient to trigger a duty on the agency's part to reprocess all responsive records."); cf. Meeropol v. Meese, 790 F.2d 942, 960 (D.C. Cir. 1986) (concluding that error rate of 25 percent was "unacceptably high," but only "when coupled with the finding . . . that the FBI had been intransigent"). In these circumstances, the Court will not order the Government to spend even more time chasing after what may be twenty – or zero – other minimally responsive documents out of thousands.

15

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment. An Order consistent with this Opinion shall issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: June 11, 2014